UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                    Plaintiff

v.                                                                    Criminal Action No. 3:25-cr-00051-RGJ

MARCOS JUAREZ-MORENTE A/K/A                                                          Defendant
JULIO MARTINEZ-CASTRO

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

The United States moves to revoke release order. [DE 13]. The Defendant, Marcos Juarez-Morente a/k/a Julio Martinez-Castro ("Juarez-Morente") responded. [DE 17]. This matter is ripe. For the reasons stated below, the United States's motion [DE 13] is **DENIED**.

**I.    BACKGROUND**

A criminal complaint and arrest warrant were issued for Juarez-Morente on March 13, 2025. [DE 1]. Juarez-Morente appeared for his initial appearance on March 18, 2025. [DE 3, DE 4]. Juarez-Morente was then indicted on March 19, 2025, on one count of illegal reentry after deportation/removal in violation of 8 U.S.C. 1326(a). [DE 7]. It is alleged that Juarez-Morente "was found in the United States after having been denied admission, excluded, deported, and removed from the United States on or about January 20, 2006 and May 19, 2006, and not having obtained the express consent of the Secretary of the Department of Homeland Security to reapply for admission . . ." [DE 7]. On March 20, 2025, Juarez-Morente was arraigned, and a detention hearing held. [DE 14]. Juarez-Morente was ordered released on bond with conditions pending trial, but that order was stayed. [*see* DE 14 at 40].

At the time of the detention hearing, it was established that this is not a presumption case. Juarez-Morente is 38 years old and from Guatemala. A Department of Homeland Security

1

("DHS") Immigration Detainer – Notice of Action ("ICE Detainer") was issued for Juarez-Morente to the US Marshals stating that "probable cause exists that the subject is a removable alien," that a "final order of removal against the alien" exists, and requesting the Marshals notify DHS should Juarez-Morente be ordered released and maintain custody of Juarez-Morente for an additional 48 hour period beyond Juarez-Morente's release date in order for DHS to take Juarez-Morente into custody.

A pretrial services report was prepared by the United State Probation office based on information provided by arresting officers and a criminal record check. But a pretrial service interview of Juarez-Morente was not conducted. The pretrial services report recommended detention and assessed that Juarez-Morente poses a risk of nonappearance because of his ties to a foreign country and prior DUI conviction. No further report or interview was ordered from pretrial services.

The United States asserted that detention was appropriate not necessarily because of a risk of flight, but as a practical matter a risk of nonappearance because there is no set of conditions the Court could put on him that would ensure that removal proceedings by ICE will not result in his immediate deportation. The United States also asserted that he has used several aliases, one of which is contained in the complaint, and five different aliases when encountering law enforcement. The United States also emphasized that Juarez-Morente's prior removals indicate lack of willingness to follow court orders.

At the detention hearing, Juarez-Morente argued that the United States has failed to meet its burden to show either risk of nonappearance or dangerousness and he is seeking release. He argued the ICE detainer is not the prime factor to consider. Both of his deportations occurred over a period of four months close to the United States-Mexico border in short succession 19 years ago.

Before his current arrest he was employed in restaurant work, and it is the sort of work he could take on again if released. As to the aliases in the complaint, one is his name without his middle name, and one is his name as listed on the indictment, so there are only three, not five. He also pointed out that the Court has a complete criminal history and there is no evidence he has used any of those aliases to avoid criminal convictions. He also emphasized when he was arrested in October 2024 for DUI, he showed up for his appearances, and paid the fine ordered; thus, he took responsibility for his crime and that is what he would do in this case.

The Magistrate Judge recognized that the United States raised a fair point that Juarez-Morente been deported twice, but those facts are somewhat diluted because that was 19 years ago. Ultimately, the Magistrate Judge held the United States failed to meet its burden to demonstrate sufficient risk of failure to appear or dangerousness to the community to warrant detention and instead released Juarez-Morente on a $25,000 unsecured appearance bond with additional conditions including submitting to supervision by and reporting to the U.S. Probation Office, restricting travel to the Western District of Kentucky, not possessing a firearm, participating in location monitoring, and if taken into ICE custody and released, to immediately report to U.S. Probation. [DE 15].

The United States moved this Court revoke Juarez-Morente's release order, [DE 13], arguing that it has proven risk of nonappearance and risk of flight based on Juarez-Morente's ICE detainer. Juarez-Morente responded, [DE 17], arguing that the United States fails to meet its burden to demonstrate either risk of nonappearance or dangerousness and the appearance bond and conditions ordered by the Magistrate Judge are sufficient.

3

## II.    DISCUSSION

### 1. Standard

18 U.S.C. § 3145(a) governs review of release orders and provides that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . [t]he motion shall be determined promptly."  The statute also provides that "the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2).  This Court reviews a Magistrate Judge's release or detention order *de novo*. *United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *2 (E.D. Mich. Sept. 12, 2016) citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985).  On review, this Court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. It provides four options: (1) release on personal recognizance or upon execution of an unsecured appearance bond, (2) release on a condition or combination of conditions, (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a).  A defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004)(noting that the requirement is not one of "guarantee," but instead "reasonable assurance"). To merit an order of detention, the United States

must prove either (1) that the defendant poses a risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) that he poses a risk to the safety of others and the community, *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the district court considers four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person and/or the defendant poses a threat to the safety of any other person in the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). Proof of risk for flight is determined by a preponderance of the evidence. *United States v. Kirk*, No. 93-1459, 992 F.2d 1218 (6th Cir. 1993).

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv); *United States v. Spivak*, 555 F. Supp. 3d 541, 549 (N.D. Ohio 2021).

**2. Motion to Revoke Release Order**

The Magistrate Judge found that the United States failed to meet it burden for detention and on a *de novo* review. This Court agrees both as to risk of flight and danger to the community.

a. <u>Risk of Nonappearance and Risk of Flight</u>

The "risk of flight" under subsection 18 U.S.C. 3142(f)(2)(A) is viewed as a subset of the broader and more general "risk of nonappearance" set forth in 18 U.S.C. 3142(e). *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("'[I]t is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk. In the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins. Precision about these distinctions is constitutionally mandated and statutorily required.'") (quoting Lauryn P. Gouldin, Defining Flight Risk, 85 U. Chi. L. Rev. 677 (2018)).

The preponderance of the evidence standard requires that the risk of flight be substantial, rather than speculative or theoretical. *United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023) (noting that "serious risk of flight" requires more than a mere possibility of nonappearance) (citing *White*, 2021 WL 2155441 at *7). The mere existence of a removal order or ICE detainer is insufficient, alone, to establish a serious risk of flight. *United States v. Veloz-*

*Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018) (emphasizing that the Bail Reform Act and immigration analyses are distinct); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based."); *United States v. Salgado*, No. CR 20-53JJM, 2020 WL 4747931, at *4 (D.R.I. Aug. 17, 2020), at *4 (holding that neither a serious risk of flight under § 3142(f)(2)(A) nor a risk of nonappearance under § 3142(e) can be established per se by an ICE detainer, even if removal might result in a nonvolitional failure to appear). "The core inquiry . . . is whether there is a serious risk a defendant will *voluntarily* evade judicial oversight." *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *5 (E.D. Ky. Mar. 5, 2025).

Here, the United States primarily argues that Juarez-Morente is a risk of nonappearance because he will be deported by ICE if released, and that he is a flight risk because of the ICE detainer. As set forth above, it would not be appropriate for the Court to consider the ICE detainer alone as a basis to find risk of flight or risk of nonappearance, even if removal might result in involuntary failure to appear. Certainly, it appears possible that if released ICE could remove Juarez-Morente upon his release given a final order of removal has been entered against him. But other than this, there is no evidence that would support finding a substantial risk of nonappearance.

Juarez-Morente accepted responsibility and appeared in court for his conviction for DUI this past Fall, he did not flee, and his previous removals were almost twenty years ago. No evidence has been presented that he has ever attempted to flee from law enforcement, failed to appear or attempted to avoid his DUI or deportation proceedings. As to motive to flee, Juarez-Morente twice returned after being removed, and both times he returned to the United States in short succession. There is no evidence that he desires to flee and return to Guatemala. No evidence

has been presented that he uses illegal substances or has substantial financial resources. Whether he is removed by ICE upon his release is, as a practical matter, a decision of the executive branch, and if that occurs it will not be due to an act of Juarez-Morente and is outside this Court's control. Other than the ICE detainer, there is no evidence that demonstrates a substantial risk of Juarez-Morente's voluntary nonappearance or flight. *Rodriguez-Fuentes*, 2025 WL 711955, at *5. The Court thus agrees with the Magistrate Judge that the United States has failed to prove by a preponderance of the evidence risk of flight or nonappearance.

    b. <u>Danger to the Community</u>

As to the risk of dangerousness to others, the United States does not argue in its motion that Juarez-Morente is a danger to the community and the Court sees no evidence to support dangerousness.

    c. <u>Factors Under Section 3142</u>

As to 18 U.S.C. § 3142(g)(1), the nature and circumstances of the offense charged, as noted above Juarez-Morente took responsibility for his DUI and his previous removals were 19 years ago.

As to 18 U.S.C. § 3142(g)(2), the weight of the evidence, this factor specifically refers to the weight of the evidence of dangerousness and not the weight of the evidence of guilt. *Stone*, 608 F.3d at 948. Here, Juarez-Morente took responsibility for his prior DUI, and has no criminal history of violence.

As to 18 U.S.C. § 3142(g)(3), the Court considers the history and characteristics of the defendant which include a wide range of factors such as the defendant's character, family ties, employment, financial resources, criminal history, and whether, at the time of the current offense or arrest, the defendant was on release pending trial. Little information has been presented other

than Juarez-Morente is from Guatamala, was working in the restaurant industry when arrested, was removed twice in 2006, and had a DUI in October 2024.

As to 18 U.S.C. § 3142(g)(4), the nature and seriousness of the danger to any person or the community that would be posed by defendant's release must be considered. Again, as noted above the United States does not argue dangerousness and the Court agrees.

### III.    CONCLUSION

The Court has reviewed the evidence presented at the detention hearing and listened to the hearing in its entirety. Simply put, the ICE detainer alone cannot substantiate a finding of risk of flight or dangerousness without more. Looking at all the evidence presented, lack of a presumption, a single DUI conviction, lack of violence, and circumstances of the alleged offense, cannot substantiate a risk of flight, nor can it in combination with the ICE detainer.

For the reasons explained above the Court does not find that clear and convincing evidence exists that Juarez-Morente poses a danger to the community or that there is no condition or set of conditions of release that can adequately protect the community. Further, the Court does not find by a preponderance of the evidence that Juarez-Morente poses a flight risk or risk of nonappearance sufficient to warrant detention. If the United States, generally, wishes to detain Juarez-Morente on account of the ICE detainer, there is a 48 hour hold pursuant to that detainer. There are not, however, reasons to detain him pursuant to the Bail Reform Act.

For the reasons explained above the Court does not find that clear and convincing evidence exists that Juarez-Morente poses a danger to the community or that there is no condition or set of conditions of release that can adequately protect the community. Further, an ICE detainer alone is not sufficient to support by a preponderance of the evidence that Juarez-Morente poses a flight risk or risk of nonappearance.

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the United States's motion to revoke release order [DE 13] is **DENIED**.

*Rebecca Grady Jennings, District Judge*
United States District Court

March 28, 2025

Cc:   Counsel of Record